IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
PLANO DIVISION

| | |
|---|---|
| BITUMINOUS CASUALTY CO.,<br>320 18th Street<br>Rock Island, Illinois 61201<br><br>                      Plaintiff,<br><br>vs.<br><br>DICKERSON CONSTRUCTION CO.,<br>INC.<br>1130 North Louisiana Drive<br>Celina, Texas 75009-0181<br><br>(Serve:     Lewis D. Dickerson<br>             Registered Agent<br>             1130 North Louisiana Drive<br>             Celina, Texas 75009-0181)<br><br>                   Defendant. | Civil Action No. _____ |

## COMPLAINT

Plaintiff Bituminous Casualty Co. ["Bituminous"] brings this Complaint against

Dickerson Construction Co., Inc., ["Dickerson"] as follows:

I.    *JURISDICTION, PARTIES AND VENUE*

1.    Jurisdiction for this action lies under 28 U.S.C. § 1332. As set forth more

fully in succeeding paragraphs, there exists complete diversity of citizenship between

the parties. The amount in controversy exceeds $75,000 exclusive of costs and interest.

2.    Plaintiff is a corporation solely incorporated in Illinois duly authorized by

the Texas Department of Insurance to issue policies of insurance in the state of Texas.

Plaintiff's sole principal place of business is located at 320 18th Street, Rock Island, Illinois 61201. Bituminous is a citizen of the state of Illinois and not a citizen of the state of Texas.

3.    Defendant Dickerson is a Texas corporation solely incorporated in the state of Texas in good standing whose sole principal place of business is located at 1130 North Louisiana Drive, Celina, Texas 75009. Dickerson is a citizen of the state of Texas and not a citizen of the state of Illinois.

4.    Venue is proper in this district because all or a substantial portion of the events giving rise to this matter arose in this district.

5.    This Court has the power to grant the relief requested in this action by virtue of 28 U.S.C. §§ 2201-02.

II.    *FACTS GIVING RISE TO THIS MATTER.*

6.    On or about October 16, 2009, Atmos Energy Corp. named Dickerson as a Third-Party Defendant in an action styled *Foster et al., v. Atmos Energy Corp., et al.,* No. 08-04961-D, in County Court at Law Number 4, Dallas County, Texas ["the Atmos suit"]. A true and correct copy of the live pleading in that action is attached hereto and incorporated herein as Exhibit A.

7.    Atmos' Third-Party Petition alleged that it had been sued in two lawsuits that had been consolidated into the *Foster* action just described. Each of the two lawsuits alleged that the respective plaintiffs had allegedly been injured or killed or suffered property damage as the result of an explosion that allegedly occurred in McKinney, Texas, on May 16, 2008. According to the Atmos Third-Party Petition, each

COMPLAINT                                                                                    Page 2
2797711.1

of the two petitions alleged that "escaping natural gas from an existing natural gas line punctured by [M.J. Sheridan of Texas, Inc., another defendant in the original lawsuits,] during directional drilling operations in front of 601 Throckmorton Street in McKinney, Texas migrated to Mrs. Foster's home [at 615 Fenet Street] where it ignited and caused an explosion."

8.    According to paragraphs 25 and 26 of Atmos' Third-Party Petition, Dickerson performed various work "in the City's right of way on the west side of Throckmorton Street going north from Fenet Street" from November 12, to November 20, 2007, and a new sanitary sewer cleanout in the City's right of way in front of 601 Throckmorton Street on or about November 27, 2007 and November 28, 2007," almost six months before the incident described in the main petitions occurred.

9.    Atmos alleged that Dickerson's negligence and/or fault caused or contributed to the injuries and/or damages allegedly sustained by the Plaintiffs in the *Foster* lawsuits.  Atmos prayed for judgment against Dickerson on various theories all connected with the November 2007 operations just described.

10.    Dickerson has denied all liability and disputes Atmos' claims.

11.    Bituminous issued two insurance policies to Dickerson, a policy of general liability insurance bearing policy number CLP 3 252 486 B ["the Bituminous liability policy"] and a policy of umbrella/excess insurance bearing policy number CUP 2 581 522 B ["the Bituminous excess policy"], each of which was effective from April 11, 2008, to April 11, 2009.

12.    The Bituminous liability policy was written on the CG 00 01 form (12 04 ed.), which provides occurrence-based coverage for damages because of "bodily injury" or "property damage" during the policy period. However, the Bituminous liability policy also contained an exclusionary provision on form L-1749b-SIG that read as follows:

It is agreed that the exclusion relating to the actual, alleged or threatened discharge, dispersal release or escape of pollutants is replaced by the following:

a.    Bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.

b.    Any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Subparagraph (1) does not apply to bodily injury or property damage caused by heat, smoke or fumes from a hostile fire.  As used in this exclusion, a hostile fire means one which becomes uncontrollable, or breaks out from where it was intended to be.

Pollutants means any solid liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

13.    In addition, the Bituminous liability policy contained a second, limited restoration of coverage subject to the terms contained on form L2399b (10/01).  It states that the endorsement modified the Bituminous policy's CGL coverage and further states:

| | |
|---|---|
| Each Pollution Incident Limit | $100,000 |
| Pollution Liability Aggregate Limit | $100,000 |
| Property Damage Deductible | $1,000 Each Pollution Incident |

A    The following is added to COVERAGES (Section 1)

COVERAGE D. LIMITED POLLUTION COVERAGE

a.    We will pay those sums that the insured becomes legally obligated to pay:

    (1)    As damages because of:

        (a)    "bodily injury"; or
        (b)    "property damage"; . . .

to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "pollution incident" and settle any claim or "suit" that may result. . . .

b.    This insurance applies to "bodily injury," "property damage" and "environmental damage" only if:

    (1)    The "bodily injury," "property damage" or "environmental damage" is caused by a "pollution incident:"

        (a)    on or from a "work site" in the "coverage territory;" and
        (b)    that begins or ends within 72 hours of the incident; and
        (c)    occurs during the policy period.

14.    The L2399b form contains several definitions, which read as follows:

"Environmental damage" means the injurious presence of "Pollutants" in or upon land, the atmosphere or any water course or body of water.

"Pollution incident" means the actual emission, discharge, release, or escape of "pollutants" on or from a "work site" provided that such emission, discharge, release or escape results in "environmental damage." The entirety of any such emission, discharge, release or escape will be deemed to be one "pollution incident."

"Work site" means any site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations. . . .

The L2399b form does not contain a separate definition of "pollutants" so the definition contained in form L1749b applies to it.

15.    The Bituminous umbrella policy also contains a pollution exclusion on form CUP 1804b (02-99), which reads as follows:

It is agreed that this policy does not apply:

A.    to any liability for "bodily injury," "property damage," or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of "pollutants" at any time.

B.    to any loss, cost or expense arising out of any request or order that the "insured" test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "pollutants."

C.    to any obligation of the "insured" to indemnify or contribute to any party because of "bodily injury," "property damage," or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of "pollutants."

D.    to any obligation to defend any "suit" or "claim" against any "insured" alleging "bodily injury," "property damage," or "personal and advertising injury" and seeking damages for "bodily injury," "property damage," or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of "pollutants."

Subparagraph (A) of this exclusion does not apply to "bodily injury," "property damage," or "personal and advertising injury" caused by heat, smoke of fumes from "hostile fire."

The following additional definitions apply when used in reference to this policy:

"Pollutants" means any solid liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.   Waste includes materials to be recycled, reconditioned or reclaimed.

"Hostile fire" means one which becomes uncontrollable, or breaks out from where it was intended to be.

16.   Dickerson has demanded that Bituminous defend and indemnify it in the *Foster* lawsuit as respects Atmos' Third-Party Petition and any other claims that may be asserted against Dickerson in that case.   Bituminous has fully and timely reserved its rights with respect to Atmos' Third-Party Claim in the *Foster* lawsuit and offered to defend Dickerson under a reservation of rights, subject to Bituminous' right to seek a determination in this Court that Bituminous has no obligation to defend Dickerson.

III.    *CLAIM FOR DECLARATORY JUDGMENT.*

17.   Bituminous incorporates paragraphs 1-16 of this Complaint as though fully set forth herein.

18.   A live, ripe controversy exists between Bituminous and Dickerson as to the extent, if any, of Bituminous' obligations under the "Bituminous liability policy" and "Bituminous excess policy."   This controversy is not, to Bituminous' knowledge, the subject of other litigation.

19.   Specifically, based on the allegations in the Atmos Third-Party Complaint, the leaking substance alleged to have existed there constitutes a "pollutant" and therefore Bituminous has no duty to defend or indemnify Dickerson under either the "Bituminous liability policy" or the "Bituminous umbrella policy" with respect to the Atmos Third-Party Petition or any other petition in the *Foster* consolidated lawsuit.

20.     Moreover, the L2399b form in the "Bituminous liability policy" does not provide coverage in this case because the incident did not take place at a "work site," that is, a "site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf *are* performing operations . . . ." In addition, the alleged events of May 2008 do not constitute a "pollution incident" as defined in the L2399b form because the alleged emission of pollutants was not geographically from a "work site" as defined in the L2399b form where Dickerson was working and because there was no "environmental damage" as defined in the L2399b form from the alleged release. Accordingly, the "Bituminous liability policy" does not provide any potential for coverage of the Atmos Third Party Petition.

21.     The "Bituminous excess policy" does not contain form L2399b or any equivalent provision other than the absolute pollution exclusion previously described.

22.     For these reasons, Bituminous is entitled to declarations that it has no duty to defend Dickerson in the *Foster* consolidated lawsuit or the Atmos Third-Party Petition in the *Foster* consolidated lawsuit, and that it is entitled to withdraw the defense it presently is providing subject to a reservation of rights.

WHEREFORE, Bituminous prays for judgment in its favor and against Defendant, for the declarations set forth in this Complaint, for orders enforcing these declarations as necessary and for such other further relief as the Court deems appropriate in the premises, as well as for its costs and fees as provided for by law.

Respectfully submitted,

Thomas B. Alleman                01017485
of
COX SMITH MATTHEWS INCORPORATED
1201 Elm Street, Suite 3300
Dallas, Texas 75270
214 698 7830 direct phone
214 698 7899 fax
talleman@coxsmith.com

ATTORNEYS FOR PLAINTIFF

CAUSE NO. 08-04961-D

| | | |
|---|---|---|
| CHARLES H. FOSTER, MARILYN J. BRUCE HICKS AND SHARON FOSTER, | § § § | IN THE COUNTY COURTS |
| and | § § | |
| RANDOLPH BRYSON AND TAMMY LUCKETT, IN THEIR CAPACITY AS ADMINISTRATORS OF THE ESTATE OF ARTHUR LEE BRYSON, | § § § § § | DALLAS COUNTY, TEXAS |
| Plaintiffs, | § § | |
| VS. | § § | |
| ATMOS ENERGY CORPORATION AND M.J. SHERIDAN OF TEXAS, INC., | § § § | |
| Defendants, | § § § | |
| DICKERSON CONSTRUCTION COMPANY | § § § | |
| Third-Party Defendant | § | COUNTY COURT AT LAW NO. 4 |

## DEFENDANT ATMOS ENERGY CORPORATION'S
## THIRD-PARTY PETITION AGAINST DICKERSON CONSTRUCTION COMPANY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Atmos Energy Corporation ("Atmos Energy") and files this Third-Party Petition Against Dickerson Construction Company ("Dickerson") and would respectfully show the Court as follows:

### I.
### DISCOVERY CONTROL PLAN

1.    A Scheduling Order is in place in these consolidated actions, making this case a Level 3 case pursuant to Texas Rule of Civil Procedure 190.4.

DEFENDANT ATMOS ENERGY CORPORATION'S
THIRD-PARTY PETITION AGAINST DICKERSON CONSTRUCTION COMPANY - Page 1

**EXHIBIT**

A

## II.
### PARTIES, JURISDICTION AND VENUE

2.    As stated in the *Foster* Plaintiffs' First Amended Petition, Plaintiffs Charles Foster, Marilyn Foster and Sharon Bruce Hicks are individuals who reside in Dallas County, Texas and are the children of Nancy Shaw Foster, who resided at 615 Fenet Street, McKinney, Texas on May 16, 2008.

3.    As stated in the *Bryson* Plaintiffs' First Amended Petition, filed on or about September 25, 2009, Randolph Bryson and Tammy Luckett are the court-appointed representatives of the Estate of Arthur Lee Bryson, which was probated in Dallas County, Texas.

4.    Defendant and Third-party Plaintiff Atmos Energy Corporation (hereinafter referred to as "Atmos Energy") has previously appeared in these proceedings and generally denied all of the allegations in Plaintiffs' Petitions and has demanded strict proof thereof.

5.    Defendant M.J. Sheridan and Texas, Inc. ("MJS") has previously appeared in these proceedings.

6.    Third-party Defendant Dickerson Construction Company, Inc. ("Dickerson") is a Texas corporation with its principal place of business located at Highway 289, P.O. Box 181, Celina, Texas, 75009.  Dickerson may be served by serving its registered agent Lewis D. Dickerson at Highway 289, P.O. Box 181, Celina, Texas, 75009, or wherever he may be found.

7.    The Court has jurisdiction over this action because the amount in controversy is alleged by Plaintiffs to be within the jurisdictional limits of the Court.  Venue is appropriate in Dallas County, Texas pursuant to Section 15.002(a) and Section 15.005 of the Texas Civil Practice and Remedies Code.

III.
## FACTUAL ALLEGATIONS

8.    On or about June 3, 2008, the *Foster* Plaintiffs filed a lawsuit against Atmos Energy and MJS arising out of the death of Nancy Shaw Foster, who died following injuries she received after an explosion and fire at her house located at 615 Fenet Street, McKinney, Texas on May 16, 2008.    Specifically, the *Foster* Plaintiffs allege that escaping natural gas from an existing natural gas line punctured by MJS during directional drilling operations in front of 601 Throckmorton Street in McKinney, Texas migrated to Mrs. Foster's home where it ignited and caused an explosion.

9.    On or about June 30, 2008, Charles Avery, as the then-acting guardian of Arthur Lee Bryson, filed suit against Atmos Energy and MJS arising out of injuries Mr. Bryson received on May 16, 2008, while visiting Mrs. Foster at her house located at 615 Fenet Street, McKinney Texas.    Mr. Bryson died on October 26, 2008.    The Estate of Arthur Lee Bryson was substituted as the proper party on September 25, 2009.    The *Bryson* Plaintiffs make allegations that are substantially similar to the *Foster* Plaintiffs' allegations.

10.    Atmos Energy has denied, and continues to deny, each and every, all and singular, the material allegations in Plaintiffs' Petitions, and demands strict proof thereof.

11.    Throckmorton Street in McKinney, Texas runs roughly north and south.    Fenet Street intersects Throckmorton Street and runs roughly east and west.    601 Throckmorton Street is the northwest corner of the intersection of Fenet Street and Throckmorton Street.    Mrs. Foster's home at 615 Fenet Street was located uphill to the west of 601 Throckmorton Street.

12.    Atmos Energy asserts that all or part of Plaintiffs' damages, if any, were caused by Dickerson.

13.    More specifically, on or about March 20, 2007, following an open bidding process, the City of McKinney (the "City") awarded Dickerson a contract (the "Contract") for the installation of new sanitary sewer lines and a new sanitary sewer interconnect along Fenet Street in the City (the "Project").

14.    The Contract specifically incorporated plans (the "Plans") drawn by Bucher, Willis & Ratliff Corporation ("BWR") and Brown & Gay Engineers, Inc. ("B&G"), both civil engineering firms retained by the City to design this Project. A true and correct copy of the Plans are attached hereto as **Exhibit A.** Page 16 of the Plans details the construction of the new sanitary sewer mains in the City's right of way on Fenet Street east and west of Throckmorton Street and sanitary sewer sub mains that would run in the City's right of way along the west side of Throckmorton Street to the north and south of Fenet Street. Specifically, this page shows the new sanitary sewer mains that would serve 615 Fenet and 601 Throckmorton.

15.    Dickerson promised and agreed to cut and plug certain sanitary sewer lines that were to be abandoned in place. For example, the City's Plans at page 16 required Dickerson to "abandon in place (cut & plug each end)" an existing 10" sanitary sewer main that was known to run under Throckmorton Street and drain to the east.

16.    Additionally, the Contract required Dickerson to comply with certain Special Conditions which were specifically incorporated into the Contract, including, but not limited to Special Condition 60.

17.    Pursuant to Special Condition 60, Dickerson promised and agreed to:

SC.60  PIPE PLUGGING AND SANITARY SEWERS TO BE ABANDONED

    1.    Prior to plugging of a sewer segment, the Contractor shall verify that no existing services will be affected.

    2.    Physically remove sanitary sewer pipe outside of the manhole for a minimum distance of one (1) foot.

    3.    Fill pipe for a minimum length of one (1) foot with non-shrink grout.

. . .

A true and correct copy of Page 35 of Dickerson's Contract with the City, including Special Condition 60, is attached hereto as **Exhibit B**.

18.    Pursuant to the Contract Dickerson also promised and agreed to comply with the October 2004 version of the Public Works Construction Standards of the North Central Texas Council of Governments ("the NCTCOG Standards"). Section 203.3.2 of the NCTCOG Standards mandates that "the remaining ends of all abandoned-in-place storm sewers, culverts, sanitary sewers, conduits and water or gas pipes shall be plugged with an adequate quantity of concrete to form a tight closure." A true and correct copy of "Item 203. Site Preparation" of the NCTCOG Standards, including 203.3.2, is attached hereto as **Exhibit C**.

19.    Finally, long-standing construction industry standards, customs, and practice mandates plugging abandoned underground pipes.

20.    BWR and B&G determined a probable construction cost for the Project in excess of $1.1 million. At a pre-bid meeting held on February 22, 2007, the City, BWR and B&G advised the potential bidders in attendance, who were all in possession of the Plans and the form of the Contract, of their estimated cost to construct the Project.

21.    Dickerson did not attend this pre-bid meeting.

22.    Dickerson's bid of $943,380.25 was the lowest bid for the Project by more than $215,000.00, the next lowest bid being $1,158,736.75.

23.    In Dickerson's itemized bid for the Project, at Item 23, it bid a cost of $150 each to "cut, plug, and abandon" the twenty-one (21) sanitary sewer lines in the Project, for a total bid

for this line item of $3,150. A true and correct copy of Dickerson's signed Contract Bid Schedule, including its response at Item 23, is attached hereto as Exhibit D.

24. Dickerson was given notice to proceed with its work by the City on or about May 14, 2007.

25. On information and belief, from approximately November 12, 2007 to November 20, 2007, Dickerson installed the new underground sanitary sewer sub main in the City's right of way on the west side of Throckmorton Street going north from Fenet Street (the "A1 Line").

26. Dickerson also installed a new sanitary sewer cleanout in the City's right of way in front of 601 Throckmorton Street on or about November 27, 2007 and November 28, 2007.

27. Prior to Dickerson's work, the sanitary sewer cleanout to 601 Throckmorton Street was connected underground to a 4" underground clay sanitary sewer lateral that ran roughly north and south, which connected to the 10" underground clay sanitary sewer main that ran roughly east and west.

28. In performing its work in front of 601 Throckmorton Street, Dickerson disconnected the existing 4" clay sanitary sewer lateral from the old cleanout for the structure located at 601 Throckmorton Street, removed the old cleanout, and connected the structure located at 601 Throckmorton Street to the new sanitary sewer cleanout and the new A1 Line.

29. On information and belief, Dickerson breached its obligation and promises to cut and plug the abandoned 10" underground sanitary sewer line on the west side of Throckmorton Street as it agreed and promised to do according to the Plans, the Contract (including Special Condition 60), its bid and payment requests, industry standards and customs, and the NCTCOG Standards.

30.    Moreover, on information and belief, Dickerson breached its obligation and promises to plug the opening left at the end of the 4" underground clay sanitary sewer lateral after it changed out the sanitary sewer cleanout in front of 601 Throckmorton, and to plug the 4" underground clay sanitary sewer lateral where it connected to the 10" underground clay sanitary sewer main, as required by the Plans, the Contract, its bid and payment requests, industry standards and customs, and the NCTCOG Standards.

31.    In payment requests dated November 5, 2007 [for work claimed to have been performed from September 30, 2007 to November 15, 2007]; December 7, 2007 [for work claimed to have been performed from November 5, 2007 to December 7, 2007]; and February 5, 2008 [for work claimed to have been performed from December 7, 2007 to February 5, 2008], Dickerson requested payment from the City for "cut[ting], plug[ing], and abandon[ing]" twenty-one (21) sanitary sewer lines.  A true and correct copy of the pay requests submitted by Dickerson to the City, including these pay requests, are attached hereto as **Exhibit E**.

32.    On May 16, 2008, the open and unplugged 4" underground clay sanitary sewer lateral and the unplugged 10" underground clay sanitary sewer main became an unforeseen and unknowable conduit for natural gas escaping from the punctured natural gas line in front of 601 Throckmorton Street.  This underground conduit – which had no known above-ground connections as of that date – carried the natural gas uphill in an undetectable manner towards 615 Fenet Street and 613 Fenet Street, both of which exploded and burned.

33.    Had either the sanitary sewer lateral or the sanitary sewer main been plugged as required by the Plans, the Contract (including Special Condition 60), Dickerson's bid and payment requests, industry standards and customs, and the NCTCOG Standards, natural gas could not have migrated uphill at a rate or quantity sufficient to create a flammable mixture of

natural gas inside 615 Fenet Street and beyond in approximately and hour and fifteen minutes. In fact, had either the 4" underground clay sanitary sewer lateral or the 10" underground clay sanitary sewer main been properly abandoned, Mrs. Foster's house would not have exploded on May 16, 2008.

## IV.
## DICKERSON'S NEGLIGENCE

34.    Atmos Energy re-alleges the factual allegations contained in paragraphs 1-33.

35.    Dickerson had a duty to exercise ordinary care and to act in a reasonably prudent manner in performing its work on the Project.

36.    Dickerson breached its duty by failing to do that which an ordinarily prudent corporation would have done under the same or similar circumstances, and/or undertook actions which an ordinarily prudent corporation would not have done under the same or similar circumstances.

37.    Dickerson's negligent actions and/or omissions include, but are not limited to, the following:

(a)    Failing to exercise reasonable care during the construction of the A1 Line in the City's right of way along Throckmorton Street running north from Fenet Street;

(b)    Failing to verify that no existing sanitary sewer services would be affected by Dickerson's disconnecting the underground sanitary sewer lateral that served the structure located at 601 Throckmorton Street from the old sanitary sewer line and connecting the structure located at 601 Throckmorton Street to the A1 line;

(c)    Failing to verify what houses were served by the 10" underground clay sanitary sewer line that ran east and west under the structure located at 601 Throckmorton Street and the houses on the north side of the 600 block of Fenet Street;

(d)    Failing to plug the open end of the 4" underground clay sanitary sewer lateral after Dickerson disconnected it at the old cleanout that served the

structure located at 601 Throckmorton Street from the old sanitary sewer line;

(e)    Failing to remove the 4" underground clay sanitary sewer lateral and plug the 10" underground sanitary sewer main where the 4" underground clay sanitary sewer lateral connected to it;

(f)    Failing to cut, plug, and abandon the 10" clay sanitary sewer line that connected to the 4" clay sanitary sewer lateral;

(g)    Creating an unforeseeable conduit underground by failing to properly plug the 4" clay sanitary sewer lateral or the 10" clay sanitary sewer main, which allowed escaping materials to enter into an abandoned sewer line and travel uphill in an undetectable manner;

(h)    Failing to perform pursuant to the Plans, the Contract (including Special Condition 60), its bid and payment requests, industry standards and customs, the NCTCOG Standards, or to fulfill its promises to the City and its citizens, including Mrs. Foster and Mr. Bryson, to cut and plug underground abandoned sanitary sewer lines; and

(i)    Failing to adhere to long-standing construction industry standards, customs, and practice by failing to plug abandoned underground sewer pipes.

38.    Dickerson's negligent actions and/or omissions caused or contributed to the cause of the accident at issue in this lawsuit and Plaintiffs' alleged damages, including punitive damages, if any.

39.    In addition or in the alternative, Dickerson's negligent actions and/or omissions were the proximate, producing, intervening, superseding, and/or sole cause of the Plaintiff's alleged damages, including punitive damages, if any.

## V.
## RES IPSA LOQUITUR

40.    Atmos Energy re-alleges the factual allegations contained in paragraphs 1-39.

41.    Atmos Energy would show that the doctrine of *res ipsa loquitur* is applicable to the actions of Dickerson in this case because Dickerson owned or controlled the employees and/or construction equipment that were used in the Project and had exclusive control over the

excavation, installation, and backfilling activities that resulted in the 4" underground abandoned clay sanitary sewer lateral and the 10" underground abandoned clay sanitary sewer main not being plugged. Atmos Energy would show that the damages alleged by Plaintiffs in this case were proximately caused by the negligence of Dickerson by and through the acts and omissions of its workers and/or employees. The failure to plug the 4" underground abandoned clay sanitary sewer lateral and the 10" underground abandoned clay sanitary sewer main would not have normally occurred in the absence of negligence and Dickerson was in exclusive management, control and/or possession of the Project and the work that caused the 4" underground abandoned clay sanitary sewer lateral and the 10" underground abandoned clay sanitary sewer main not to be plugged.

## VI.
## RESPONDEAT SUPERIOR

42.    Atmos Energy re-alleges the factual allegations contained in paragraphs 1-41.

43.    Atmos Energy would show that the doctrine of *respondeat superior* is applicable in this action due to the negligent actions and/or omissions of the workers and/or employees working on behalf and at the direction of Dickerson. Dickerson controlled the employees and/or owned the construction equipment that was used in the Project and had exclusive control over the excavation, installation, and backfilling activities that resulted in the failure to plug the 4" underground abandoned clay sanitary sewer lateral and the 10" underground abandoned clay sanitary sewer main.

## VII.
## INDEMNITY AND CONTRIBUTION

44.    Atmos Energy re-alleges the factual allegations contained in paragraphs 1-43.

45.    Plaintiffs' allegations have been denied by Atmos Energy, and affirmative and other defenses may be interposed. Nevertheless, in the very unlikely event that Plaintiffs herein should, under any theory of liability espoused by Plaintiffs at the time of the trial of the cause, have or receive judgment against Atmos Energy, then Atmos Energy is entitled to judgment against Dickerson for contribution and/or contractual, statutory, or common law indemnity for any and all sums for which it may be adjudged liable to Plaintiffs.

## VIII.
## PROPORTIONATE RESPONSIBILITY

46.    Atmos Energy re-alleges the factual allegations contained in paragraphs 1-45.

47.    Dickerson is liable to the Plaintiffs for all or part of their claimed damages in this matter due to its negligent acts and omissions described above.

48.    The above-mentioned negligent acts and omissions contributed, in whole or in part, to proximately cause Plaintiffs' alleged damages in this matter.

49.    Accordingly, pursuant to Chapter 33 of the Texas Civil Practices and Remedies Code, Atmos Energy is entitled to contribution for the percentage of responsibility assigned to Dickerson by the trier of fact.

## IX.
## REQUEST FOR DISCLOSURE

50.    Pursuant to Texas Rule of Civil Procedure 194, Dickerson is requested to disclose, within 50 days of service of this Request, the material described in Rule 194.2.

## X.
## DEMAND FOR JURY TRIAL

51.    Pursuant to Rule 216 of the Texas Rules of Civil Procedure, Atmos Energy hereby demands a jury trial in this matter. The requisite jury fee is being tendered with this filing.

## XI.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Atmos Energy respectfully requests that Dickerson be cited to appear and answer herein. Atmos Energy prays that judgment be entered in its favor against Plaintiffs' claims and against Dickerson and that Atmos Energy recovery its costs and attorneys' fees. Atmos Energy further prays for all such other and further relief to which it may be justly entitled.

Respectfully submitted,

Karin B. Torgerson
State Bar No. 00794745
Johnathan E. Collins
State Bar No. 24049522
**LOCKE LORD BISSELL & LIDDELL LLP**
2200 Ross Avenue
Suite 2200
Dallas, Texas 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Facsimile)

G. Bruce Parkerson
State Bar No. 00793106
**PLAUCHÉ MASELLI PARKERSON, LLP**
One Shell Square
701 Poydras Street, Suite 3800
New Orleans, Louisiana 70139
Telephone: (504) 582-1142
Telecopier: (504) 582-1172

**ATTORNEYS FOR ATMOS ENERGY CORPORATION**